UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA              CASE NO. 17-cr-00065-1

VERSUS                                 JUDGE FOOTE

DETRICK L. HAYWOOD                     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Federal agents were monitoring a Title III wiretap on a drug case when they overheard Defendant bragging about a drive-by shooting he conducted earlier that day. Govt. Ex. 1 (audio recording). Defendant said on the wiretap that he was going to "get the others tonight." The agents notified Shreveport Police and requested an emergency ping for Defendant's cell phone provider. It took about two hours for the first set of coordinates to arrive. Over the course of the next few hours, the confidence level or certainty factor of the coordinates (the likelihood that the phone was within the specified area) continued to narrow. The agents provided the ping information to Shreveport police as it was received.

At around 4:30 p.m. on the day of the search, the agents believed that the confidence level of the coordinates was sufficiently strong to identify the location of Defendant's phone: 725 Damaka Street. The agents already suspected from prior wiretap intercepts that Defendant resided at that location. The agents provided that address to Shreveport police as Defendant's likely location. At that point, the federal agents' involvement ceased.

Shreveport violent crime detectives, accompanied by a Shreveport police officer, arrived at the residence and obtained consent to enter and look for Defendant. During a protective sweep, the officers found an M16A2 machine gun, a Colt AR15 rifle, ammunition, a ballistic military vest, and other items. The owner of the residence stated that the items belonged to Defendant. Defendant was charged with gun crimes, and he moved to suppress the evidence discovered during the search. Doc. 24.

Following an evidentiary hearing, the undersigned issued a Report and Recommendation (Doc. 38)[1] that recommended the motion to suppress be denied. The District Judge adopted the recommendation. About the time of the pretrial conference, the Government produced additional discovery to Defendant. That discovery led counsel for Defendant to question the accuracy and credibility of some of the testimony and evidence introduced at the hearing on Defendant's motion.

**Defendant's New Arguments**

With permission of the court, Defendant filed a supplemental memorandum in support of his motion to suppress (Doc. 65). First, Defendant argues that, contrary to the court's earlier conclusion, Defendant has standing to contest the search of the residence because the police officers and/or federal agents believed that the residence in question was Defendant's residence. Second, Defendant argues that the police officers gave incorrect and contradictory testimony which casts doubt on this court's prior conclusion that the

---

[1] This Report and Recommendation does not contain all of the factual details set forth in the prior opinion. Instead, this opinion is limited to the new arguments raised by Defendant after the first hearing.

owner of the residence, Ms. Wells, consented to the search of her residence. Finally, Defendant argues that the search was not justified as a protective sweep due to exigent circumstances, because the officers did not arrive at the residence until about 5:00 p.m., even though federal agents had received information at about 1:45 p.m. about the possibility of another drive-by shooting. Defendant suggests that the delay belies any argument that police approached the residence or performed a protective sweep due to an emergency.

**Analysis**

    **Standing**

Federal agents were aware of Defendant and believed that he lived in the residence in question. But what the agents and police officers may have subjectively believed about Defendant's connections to the residence is not what matters. Even if the agents and officers believed that Defendant lived in the residence, a third party's subjective belief has no bearing on the legal question of whether Defendant had an expectation of privacy in the property. United States v. Taylor, 2015 WL 4946124 *3 (N.D. Ind. 2015). As explained in this court's prior ruling, Defendant did not live in the residence, he had not been in a relationship with Ms. Wells in years, he had no control or authority over the home, and he could not come and go as he pleased. Defendant presents nothing new on this point to reverse the court's prior conclusion on his lack of standing to contest the search.

    **Discrepancies and Inconsistencies**

Defendant points out the following discrepancies and inconsistencies: (1) Detective Curtis testified in the first hearing that the residence had burglar bars on the front door, but

Curtis admitted he was mistaken after he was confronted with photographs of the residence at the second hearing; (2) Officer Pollit testified at the first hearing that he arrived at the residence at around 3:00 p.m., when an "event chronology" introduced at the second hearing showed that he arrived at 5:00 p.m.; (3) Detective Curtis testified at the first hearing (consistent with his report) that he arrived at the residence at 3:30 p.m., when, in fact, he arrived at 5:00 p.m.; and (4) Officer Pollit failed to preserve the audio recordings created by his body mic that would have confirmed Defendant's theory that Ms. Wells refused to give consent to enter her residence.

The witnesses' errors with regard to burglar bars and incorrect times of arrival at the residence are relatively minor considering the fast moving investigation and the fluid nature of the circumstances facing the officers. The event chronology, which was created by Shreveport police dispatch, shows when the detectives met with Officer Pollit at a nearby convenience store to brief him on the situation and request his assistance and when the detectives and Officer Pollit arrived at the residence. The errors are not significant and do not affect the undersigned's prior conclusions regarding the credibility of Detective Curtis or Officer Pollit.

Officer Pollit's failure to preserve his recording of his encounter with Ms. Wells is unfortunate indeed. This was a serious investigation of a threat to conduct a potentially deadly drive-by shooting. The evidence should have been preserved, and Pollit candidly so admitted. However, he explained that his role was limited to accompanying the detectives to the residence (because he regularly patrolled that area) and assisting them in locating Defendant. He had no subsequent involvement in the investigation of the previous

drive-by shooting or the threatened drive-by shooting. Once he left the residence, Pollit returned to his regular patrol duties. In light of these circumstances, the undersigned finds no malicious intent or bad faith on the part of Officer Pollit in not preserving the audio recording.

**Consent**

Defendant offers nothing new, except for additional arguments regarding credibility, regarding whether Ms. Wells granted verbal consent for the officers to enter her home to look for Defendant. The undersigned stands by the analysis and conclusions in the first opinion. Ms. Wells denied that Defendant was in the home. In fact, Defendant left out the back door when the officers arrived and was seen by Officer Pollit in the back yard. Pollit did not know it was Defendant who he saw in the back yard, and Pollit asked the man whether Defendant was in the house. The man said yes.[2] Pollit then approached Ms. Wells at the front door, reported that he was told Defendant was in the house, and obtained verbal consent from Ms. Wells to enter the home to look for Defendant.[3]

**Protective Sweep**

Defendant makes much of the fact that the agents received information about another possible drive-by shooting at 1:45 p.m. but Shreveport police did not approach Ms. Wells' residence until 5:00 p.m. Defendant also points out that it took almost two hours (until about 3:45 p.m.) for the agents to receive the first "emergency" ping location, and

---

[2] Later, Defendant was overheard on another Title III wiretap saying that he "headed to the ditch" behind the residence, and that the police had taken all of the guns.
[3] Officer Pollit testified that he had written consent forms in his car, but he did not get one for Ms. Wells to sign because "this was kind of a quick thing."

because agents believed all along that Defendant resided at 725 Damaka, they should have simply obtained a search warrant for the residence.

Agent Hursey testified that obtaining the emergency ping, which he explained usually takes at least two hours to begin receiving, was the best option for trying to locate Defendant. He did not believe he had time to get a search warrant, and he expressed doubt about whether he had probable cause at that moment to request a search warrant. He also did not want to conduct a knock and talk because that might have resulted in Ms. Wells warning Defendant that the police were looking for him.

Defendant also argues that there was no reason to believe that he was inside the residence when it was searched and, therefore, "exigent circumstances and protective sweeps cannot forgive the constitutional violations committed in this matter." Supp. Brief at p. 6. But that is wrong. The federal agents were already aware of Defendant as a result of unrelated wiretaps, and they believed he lived in the residence. When the confidence level narrowed to houses surrounding the residence, the agents notified Shreveport police of Defendant's likely location. When the police arrived, a person in the backyard of the residence told Officer Pollit that Defendant was inside. At that point, the officers had every reason to believe that Defendant was inside the residence.

**Conclusion**

Defendant's arguments in the supplemental briefs cast no doubt on the correctness of the court's first opinion denying Defendant's motion to suppress. Defense counsel has done an excellent job in arguing otherwise, but the credible facts show that (1) Defendant lacks standing to challenge the search of Ms. Wells' residence; (2) Ms. Wells granted

verbal consent for the officers to enter the residence to look for Defendant; (3) the agents and officers acted quickly and within the parameters of the constitution to attempt to locate Defendant and prevent another drive-by shooting; and (4) the evidence against Defendant was found in plain view pursuant to a valid protective sweep during exigent circumstances.

Accordingly;

It is again recommended that Defendant's Motion to Suppress be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of October, 2018.

Mark L. Hornsby
U.S. Magistrate Judge